1  Khatereh Sage Fahimi, Bar No. 252152
   sfahimi@littler.com
2  Warsame Y. Hassan, Bar No. 330018
   wyhassan@littler.com
3  LITTLER MENDELSON, P.C.
   501 W. Broadway, Suite 900
4  San Diego, California 92101.3577
   Telephone: 619.232.0441
5  Fax No.: 619.232.4302

6  Attorneys for Defendant
   DEN-MAT HOLDINGS, LLC
7

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                   WESTERN DIVISION
11

12 | LAKEYSHA VAUGHN, individually and on behalf of others similarly situated, | Case No. 2:24-cv-2844
13 | | [Removed from Santa Barbara Superior Court Case No. 24CV01024]
14 | Plaintiff, |
15 | v. | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**
16 | DEN-MAT HOLDINGS, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive, |
17 | |
18 | Defendants. | Trial Date: Not Yet Set
   | | Complaint Filed: February 21, 2024

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF LAKEYSHA VAUGHN AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441(a) and (b), and 1446, Defendant DenMat Holdings, LLC ("Defendant" or "DenMat") hereby removes the above-captioned action from the Superior Court for the State of California, in and for the County of Santa Barbara, to the United States District Court for the Central District of California, Western Division. As grounds for removal, Defendant states as follows:

## I.   STATE COURT ACTION

1. Plaintiff Lakeysha Vaughn filed a lawsuit in the Superior Court for the State of California, in and for the County of Santa Barbara, entitled *Lakeysha Vaughn, individually and on behalf of others similarly situated v. Den-Mat Holdings, LLC et al.*, Docket No. 24CV01042 (the "State Court Action") on February 21, 2024.

2. The Complaint asserts the following Class Action Claims: (1) Unpaid Minimum Wages in Violation of California Labor Code §§1194, 1197 and 1197.1; (2) Unpaid Overtime in Violation of California Labor Code §§ 510 and 1198; (3) Unpaid Meal Period Premiums in Violation of California Labor Code §§ 226.7 and 512(a); (4) Unpaid Rest Period Premiums in Violation of California Labor Code § 226.7; (5) Wages Not Timely Paid During Employment in Violation of California Labor Code §§ 204 and 210; (6) Failure to Provide Accurate Wage Statements in Violation of California Labor Code § 226(a); (7) Untimely Final Wages in Violation of California Labor Code §§ 201, 202, and 203; (8) Failure to Reimburse Necessary Business Expenses in Violation of California Labor Code §§ 2800 and 2802; and (9) Unfair Competition in Violation of California Business & Professions Code § 17200, et seq. (Fahimi Decl. Ex. A.) The allegations in the Complaint are incorporated into this Notice of Removal by reference without admitting the truth of any of them.

/ / /

## TIMELINESS OF REMOVAL

3. Defendant was served with process of the Complaint and Summons on March 18, 2024. Accordingly, this Notice of Removal is timely. *See* 28 U.S.C. § 1446(b).

4. A true and correct copy of the Summons (Ex. A), Complaint (Ex. B) and Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Court Administered Dispute Resolution Information and Order and Notice of Case Assignment; Notice of Case Management Conference (Ex. C) and Proof of Service of Summons (Ex. D), are attached as **Exhibits A-D** and constitute all processes, pleadings and orders served upon Defendant in this action to the present date. *See* 28 U.S.C. § 1446(a).

5. Defendant filed in Answer in this action on April 8, 2024 which is attached hereto as **Exhibit E.**

## STATEMENT OF JURISDICTION

6. This Court has original jurisdiction over the State Court Action under 28 U.S.C. section 1332(d). Removal jurisdiction exists because, in relevant part, the Class Action Fairness Act of 2005 ("CAFA" or the "Act") grants district courts original jurisdiction over civil class actions filed under federal or state law in which the amount in controversy exceeds $5,000,000, and it is between "citizens of different States." *See* 28 U.S.C. § 1332(d). CAFA vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *Id*. CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

/ / /

# REMOVAL JURISDICTION PURSUANT TO CAFA

7. This Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d). CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where there are at least 100 putative class members, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets each CAFA requirement for removal, and is properly removed by the filing of this Notice of Removal.

### A. This is a Class Action

8. Under CAFA, a "class action" means "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State Statute or rule of juridical procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

9. Plaintiff filed this as a class action. (Complaint, ¶ 4 ("Plaintiff brings this lawsuit as a class action on behalf of Plaintiff and all others similarly situated, as members of a proposed class pursuant to California Code of Civil Procedure section 382.").) Plaintiff has therefore brought a class action under CAFA.

### B. The Proposed Class Contains at least 100 Members

10. The provisions of CAFA apply to proposed class actions involving 100 individuals or more. See 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D).

11. Here, Plaintiff brings her lawsuit on behalf of herself and "all others similarly situated, as members of a proposed class pursuant to California Code of Civil Procedure section 382 . . ." (Complaint, ¶ 23.) Plaintiff defines the putative class to include all "current and former hourly-paid and/or non-exempt employees who worked

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

4

for Defendants in the State of California at any time during the period from four years prior to the date of the filing of this Complaint until final judgment." (Complaint, ¶ 24.)

12. Although Defendant disputes the propriety of Plaintiff's class definition, between February 21, 2020 to present, Defendant employed approximately 334 hourly-paid and/or non-exempt employees in the State of California.  (Declaration of Robert Cartagena ("Cartagena Decl.") at ¶ .)

### C. Defendant is Not a State, State Official, or Government Entity

13. CAFA does not apply to class actions where the "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(B).

14. Defendant is a limited liability company, not a state, state official, or other governmental entity exempt from CAFA. (Cartagena Decl. at ¶2.)

### D. Minimal Diversity Exists Between Plaintiff and Defendant

15. CAFA's minimal diversity requirement is satisfied, inter alia, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *Strotek Corp. v. Air Transp. Ass'n of Am.,* 300 F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because the named Plaintiff and Defendant are each citizens of different states.

16. In a putative class action such as the present one, only the citizenship of the named plaintiff is pertinent to determining subject matter jurisdiction in federal court for purposes of removal. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir. 2001). Accordingly, when removing this action based on diversity, only the citizenship of the plaintiff is relevant for assessing whether there is sufficient diversity from defendant.

17. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *Bank of N.Y. Mellon v. Nersesian*, 2013 WL 8284799, at *7 (C.D. Cal. 2013)

(citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain).) Residency, as pleaded in a state court complaint, can create a rebuttable presumption of domicile supporting diversity of citizenship. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Overholt v. Airista Flow Inc.*, No. 17cv1337-MMA (AGS), 2018 WL 355231, at *4 (S.D. Cal. Jan. 10, 2018).

18. Here, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in the State of California. Complaint, ¶ 9 ("Plaintiff LAKEYSHA VAUGHN is and was an individual residing in Santa Barbara County in the State of California"). Thus, Plaintiff is a citizen of California.

19. Defendant is not a citizen of California. For the purposes of diversity jurisdiction, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *Lipp v. Carvin Software, LLC*, No. CV 23-3681, 2023 WL 4681612, at *1 (C.D. Cal. May 18, 2023) ("CAFA . . . provides that, '[f]or purposes of this subsection . . ., an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized") (citing *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714–16 (N.D. Cal. 2021); *see also Hernandez v. Pure Health Research*, No. 23CV-00971, 2023 WL 7029213, at *3 (S.D. Cal. Oct. 25, 2023) ("[I]n a CAFA case, where a party is an LLC, the LLC's citizenship shall be the State under whose laws it is organized and the State where it has its principal place of business.").

20. Defendant is a limited liability company. (Cartagena Decl. ¶¶ 2-3.) At the time of the filing of the Complaint, Defendant was, and still is, organized under the laws

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

6

1  of the State of Delaware, has its principal place of business in the State of New York,
2  and is therefore a citizen of the states of Delaware or New York (*Id.*)

3    21.    Outside of the CAFA context, courts consider a limited liability company
4  for diversity purposes a citizen every state of which its members are citizens. *See*
5  *Johnson v. Columbia Properties Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006).

6    22.    Even considering this alternative framework, Defendant still remains
7  diverse to Plaintiff. DenMat is a limited liability company organized under the laws of
8  Delaware. At the time Plaintiff commenced this action and at the time of removal,
9  Defendant had one member, which was also a citizen of Delaware and New York.
10 (Cartagena Decl. ¶3.) Accordingly, for purposes of diversity jurisdiction, under this
11 alternative framework, Defendant is still not a citizen of the State of California.

12   23.    Defendants DOES 1 through 25 are fictitious, not parties to this action,
13 have not been named or served, and need not consent to removal. For purposes of
14 removal, the citizenship of defendants sued under fictitious names is disregarded. *See*
15 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.
16 1987).

17   24.    Accordingly, the named Plaintiff is a citizen of a state (California) different
18 from the Defendant (New York). Minimal diversity exists for purposes of CAFA
19 jurisdiction. See 28 U.S.C. §§ 1332(d)(2)(A), 1453.

20   **E.    The Amount in Controversy Exceeds Five Million Dollars**

21   25.    The removal statute requires a defendant seeking to remove a case to
22 federal court to file a notice "containing a short and plain statement of the grounds for
23 removal." 28 U.S.C. § 1446(a). In *Dart Cherokee Basin Operating Co. v. Owens*, 135
24 S. Ct. 547, 554 (2014), the Supreme Court recognized that "as specified in § 1446(a), a
25 defendant's notice of removal need include only a plausible allegation that the amount
26 in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the
27 court questions the allegations of the notice of removal is supporting evidence required.
28 *Id.* at 554. "[T]he defendant's amount-in-controversy allegation should be accepted"

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT         7

just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court diversity jurisdiction. *Id.* at 553.

26. For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that the plaintiff will prevail on her claims. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")). The ultimate inquiry is the amount that is put "in controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); accord *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are still free to challenge the actual amount of damages in subsequent proceedings and at trial" because they are only estimating the amount in controversy).

27. Defendants "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148–49 (C.D. Cal. 2010)).

28. In addition, defendants may assume violation rates of 100% in calculating the amount in controversy when, as here, the complaint does not allege a more precise calculation. See, e.g., *Ritenour v. Carrington Mortgage Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate."); *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *20 (E.D. Cal. June 2, 2011); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *8-9 (N.D. Cal. Aug. 14, 2008); *Korn v. Polo Ralph*

*Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008); *Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages." (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)). These courts recognize "that imposing overly stringent requirements on a defendant to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *5 (N.D. Cal. June 14, 2013).

29. A defendant is thus not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz*, 2007 WL 1302504, at *5 (citing *McGraw*, 863 F. Supp. 2d at 434); see also *Jones v. Tween Brands, Inc.*, No. 2:14-CV-1631-ODW (PLAx), 2014 WL 1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding defendant did not need to provide payroll data to support removal because defendant "is not required to meet such a high burden.") (citing *Muniz*, 2007 WL 1302504, at *7); *Thomas*, 2011 WL 2173715, at *20 ("[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." (citing *Muniz*, 2007 WL 1302504, at *3)).

30. Defendant denies the validity and merit of the entirety of Plaintiff's claims, the legal theories upon which they are ostensibly based, and the claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or any members of the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

9

31. When, as here, the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. Defendant's Notice of Removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.,* 135 S. Ct. at 554.

32. The Ninth Circuit recently affirmed that a Defendant invoking CAFA jurisdiction may make reasonable assumptions in support of the amount in controversy, and if challenged, must be permitted an opportunity "to show by a preponderance of the evidence that the jurisdictional requirements are satisfied" before a district court may remand the matter. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. Sept. 3, 2019).

33. Defendant disputes that Plaintiff is a proper class representative, denies the existence of a class, and disputes and denies any wrongdoing or that any liability or damages are owed. However, for purposes of the amount in controversy calculation for removal purposes only, Defendant had approximately 334 hourly-paid and/or non-exempt employees who worked a total of approximately 31,921 workweeks from February 21, 2020 to April 1, 2024, at an average hourly rate of $20.03. (Cartagena Decl. ¶¶7-8.)

### i. Plaintiff's Minimum Wage and Overtime Claims

34. In her first and second causes of action, Plaintiff seeks to recover unpaid wages alleging Defendant failed to pay her and putative class members for all hours worked, including a claim for off-the-clock work by "(1) performing temperature checks and health screenings prior to clocking in, (2) working through meal periods (3) handling regular job duties off the clock due to cut backs and overtime not being offered by Defendants, and (4) answering text, calls, and emails in between shifts per Defendants' managers' requests." (Complaint, ¶ 35.) Plaintiff further seeks to recover unpaid wages due to Defendant's alleged failure to pay overtime and double time based on allegations that employees "regularly worked in excess of eight (8) hours in a day,

in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week and/or seven (7) consecutive days in a workweek" and "Defendants' fail[e]d to pay correct overtime wages included, inter alia, (a) when the combined total of the off-the-clock work discussed supra and the on-the-clock work exceed the number of hours that trigger the payment of overtime wages …; (b) … overtime as straight time; (c) when Defendants assigned more work than could reasonably be completed in a workday or workweek; and (d) when Defendants failed to include all required wages and renumeration when calculating setting the overtime rate." (Complaint, ¶45). As such, Plaintiff seeks compensation for Defendant's alleged failure to fully compensate minimum and overtime wages for all hours worked, interest, and attorneys' fees. (Complaint, ¶¶ 33-47.)

35. The statutory period for recovery of unpaid wages is calculated under a four-year statute of limitations. *See* Cal. Lab. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

36. While Defendant denies the merits of Plaintiff's unpaid minimum wage claims, for purposes of removal only, based on the facial allegations in Plaintiff's Complaint and the existence of a certified class, using conservative estimates of just one hour of unpaid wages per week at the employees' average hourly rate of rate for the alleged off-the-clock works, the amount in controversy for this claim for non-exempt employees is at least **$639,377.63** (1 hour * the average hourly rate of $20.03 * 31,921 workweeks).

37. While Defendant denies the merits of Plaintiff's unpaid overtime claims, for purposes of removal only, based on the facial allegations in Plaintiff's Complaint that employees *regularly* worked 12 hours a day without being paid overtime or double time (which is notably only one of the four theories on which Plaintiff basis her overtime/ double time claim) and the existence of a certified class, using a conservative estimate that employees worked one 13 hour shift a week where overtime and double

time were not paid, the amount in controversy for this claim is at least **$5,115,021.04** (4 hours of overtime at the average rate ($30.045) and 1 hour of double time ($40.06) a week * 31,921 workweeks).  *See Torrez v. Freedom Mortg. Corp.*, No. EDCV 17-867, 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017) (finding assumption rate of three hours of overtime per week was reasonable where complaint alleged that defendant "engaged in a pattern and practice" of wage abuse); *Herrera v. Carmax Auto Superstores California, LLC*, No. EDCV-14-776-MWF, 2014 WL 12586254, at *6 (C.D. Cal. June 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur.  Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.").

38. In total, pursuant to Plaintiff's First and Second Causes of Action, Plaintiff seeks to recover **$5,754,398.67**.

### ii.     Plaintiff's Meal Period Claims

39. Plaintiff's Third Cause of Action alleges that "Plaintiff and the other [putative] class members who were scheduled to work for shifts no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes" and that "Plaintiff and the other [putative] class members who were scheduled to work for shifts in excess of ten (10) hours but no longer than twelve (12) hours, and who did not waive their legally-mandated meal premiums by mutual consent, were required to work for periods longer than ten (10) hours without an uninterrupted meal period of not less than thirty (30) minutes." (Complaint, ¶¶ 52, 53.)  Plaintiff further alleges that putative class members were not provided with one hour of premium pay when denied a meal period, and seeks to recover wages and penalties.  (*Id*. at ¶¶56-58.)

40. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided.  Cal. Lab. Code § 226.7.  Plaintiff alleges meal period violations as a basis

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

12

for recovery under her unfair competition claim (Complaint, ¶ 91), with a four-year statute of limitations period under California Business & Professions Code section 17208.

41. For the purposes of removal only, based on the facial allegations in Plaintiff's Complaint and the existence of a certified class, from February 21, 2020 through April 1, 2024 Defendant employed approximately 334 non-exempt employees and there are 31,921 work-weeks at issue. (Cartagena Decl. at ¶ 7.) Furthermore, such employees earned an average hourly rate of $20.03. (*Id.* at ¶ 8.) Assuming one missed meal period per week per employee over the entire period at the average hourly rate, the amount in controversy is **$639,377.63.** ($20.03 average hourly rate x 1 meal period violation per week x 31,921 workweeks). See *Mortley v. Express Pipe & Supply Co.*, Case No. SACV 17–1938–JLS–JDE, 2018 WL 708115, at *4 (C.D. Cal. Feb. 5, 2018) (assumption of two missed meal periods per week reasonable based on allegations of a policy and practice of understaffing and "routine and systematic" violations); *Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12–77 CW, 2012 WL 1535196, at *3 (N.D. Cal. Apr. 30, 2012) (finding 100% violation rate for meal period claim reasonable based on allegation that the putative class members "routinely" did not receive meal periods); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S–11–1433 KJM DAD, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (allegations that the class was "routinely" denied meal periods and defendant had a policy and practice of not paying for all hours worked supported a 50% violation rate).

### iii. Plaintiff's Rest Period Claims

42. In her Fourth Cause of Action, Plaintiff seeks to recover premium pay under Labor Code sections 226.7 and 1198 for "routinely" failing to provide legally compliant rest periods, in the amount of one hour at the regular rate of pay. (Complaint, ¶¶ 63, 66.) Plaintiff alleges rest period violations as a basis for recovery under her unfair competition claim (Complaint, ¶ 91), with a four-year statute of limitations period under California Business & Professions Code section 17208.

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT

13

43. For the purposes of removal only, based on the facial allegations in Plaintiff's Complaint and the existence of a certified class, assuming one rest break violation rate per week, Plaintiff seeks to recover **$ 639,377.63 .** ($20.03 average hourly rate x 1 rest period violation per week x 31,921 workweeks). *See Giannini*, No. C 12-77 CW, 2012 WL 1535196, at *3 (finding 100% violation rate for a rest period claim reasonable based on allegation that putative class members "routinely" did not receive rest periods).

### v.    **Plaintiff's Failure To Timely Pay Wages**

44. Plaintiff's fifth cause of action seeks penalties pursuant to Labor Code 210 because "[a]s a result of [Defendants] failure to pay overtime, failure to pay minimum wages, meal break violations and rest break violations, Defendants ..failed to timely pay Plaintiff and other class members all wages due to them within the period permissible under California Labor Code section 204.  Complaint, ¶¶ 73-74.

45. Labor Code 210 provided that "every person who fails to pay the wages of each employee … shall be subject to a penalty as follows (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

46. For the purposes of removal only, based on the facial allegations in Plaintiff's Complaint (including that the allegations that Defendant's failure to pay wages was willful) and the existence of a certified class, and the 1 year statute of limitations applicable to this claim for a penalty, Plaintiff seeks to recover **$812,200.00** (not including any penalty for the amount unlawfully withheld which could be potentially 25% of the amounts discussed above). (From 2/20/2023 to 2/20/2024 Defendant employed approximately 156 putative class members for 8,121 work weeks or approximately 4,061 pay periods (as employees are paid bi-weekly). (Cartagena Decl. ¶9.) Therefore, 4,061 pay periods X  $200= $ 812,200.)

### vi. Plaintiff's Inaccurate Wage Statement Claim

47. In her sixth Cause of Action, and similar to her fifth cause of action, Plaintiff alleges that based on the prior allegation Defendants "failed to provide Plaintiff and the other class members with complete and accurate wage" Complaint, ¶ 77. Plaintiff further alleges "Plaintiff and the other class members have suffered injury and damage to their statutorily protected rights." Complaint, ¶ 78.

48. Labor Code section 226(e) provides for a statutory penalty for violations of Labor Code section 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs, and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code section 226(e) penalties is one year. Cal. Civ. Proc. Code § 340.

49. For the purposes of removal only, based on the facial allegations in Plaintiff's Complaint and the existence of a certified class, and the 1 year statute of limitations applicable to this claim for penalty, Plaintiff seeks to recover **$398,300.00**. From 2/20/2023 to 2/20/2024 Defendant employed approximately 156 putative class members for 8,121 work weeks or approximately 4,061 pay periods (as employees are paid bi-weekly). Therefore, (156 initial violations X $50) + (3,905 subsequent violation X $100)= $398,300).

### vii Plaintiff's Waiting Time Penalties Claim

50. Through her Seventh Cause of Action, Plaintiff seeks to recover penalties under Labor Code sections 201–203 for waiting time penalties for all putative class members for failure to pay all wages at the time of termination.  Complaint, ¶¶ 81-85. Plaintiff alleges rest period violations as a basis for recovery under her unfair competition claim (Complaint, ¶ 91), with a four-year statute of limitations period under California Business & Professions Code section 17208.

51. Labor Code section 203 provides that if an employer willfully fails to pay wages owed immediately upon discharge or resignation in accordance with Labor Code

sections 201 and 202, then the wages of the employee shall continue as a penalty from the due date at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

52. From February 20, 2020 to April 1, 2024, 206 employees have separated their employment from Defendant. These employees earned an average of $19.25. Cartagena Decl., ¶ 10. Defendant's will assume for the purposes of this calculation that its hourly employees typically work 8 hours a day (despite Plaintiff's allegation that they "regularly" worked overtime or double time). For purposes of removal only, based on a review of its records, Defendant estimates that this claim is worth **$ 951,720** (206 employees * 8 hours a day * $19.25 average hourly* 30 days=$990,283.20).

### vii. Plaintiff's Attorneys' Fees Claim

53. Plaintiff seeks attorneys' fees in her Complaint pursuant to all of her causes of action. It is well settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages as well as attorneys' fees. *See, e.g.*, *Galt GIS v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998).

54. The Ninth Circuit has an established benchmark of 25 percent of the amount recoverable for an award of attorneys' fees in class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This 25 percent figure has been repeatedly relied upon by the courts to determine the amount in controversy for removal purposes. *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) (including 25 percent attorneys' fees to increase the amount in controversy to above $5 million CAFA threshold); *Giannini*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same).

55. In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be 25 percent

to 30 percent of the settlement and, thus even a conservative estimate of attorneys' fees in this matter would be far in excess of $1 million.[1]

56. Furthermore, in affirmatively ruling that attorney's fees "may be included in the amount in controversy," *see Galt G/S*, 142 F.3d at 1155, the Ninth Circuit "must have anticipated that district courts would project fees beyond removal." *Simmons*, 209 F. Supp. 2d at 1034-35. Just as the "court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal," it also must "measure . . . fees . . . that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.*; *see also Cagle v. C & S Wholesale Grocers, Inc.*, , 2014 WL 651923 at *10–11 (holding that an estimate of the amount of attorney hours through trial was a reasonable estimate for purposes of determining amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (holding that for determining amount in controversy, attorneys' fees should be assessed through trial, and finding amount in controversy met in part by reasonable estimate of fees). Therefore, the Court may consider a 25 percent attorney's fees award for the purposes of calculating the amount in controversy.

### F. The Aggregate Amount in Controversy Exceeds $5,000,000

57. Although Defendant denies that Plaintiff and the putative class are entitled to any relief, based on the facial allegations in Plaintiff's Complaint and the existence of a certified class, and based on the reasonable, conservative assumptions derived from the evidence and the claims in Plaintiff's Complaint, the aggregate amount in controversy is well beyond $5,000,000 as summarized below:

---

[1] *See Abasi v. HCA, the Healthcare Co. Inc.*, C.D. Cal. No. CV 03-7606 (May 9, 2005) (approving $4.75 million settlement for claims of unpaid overtime, meal and rest break periods; attorney's fee award totaling over $1.2 million (25 percent)); *Burns v. Merrill Lynch*, N.D. Cal. No. 3:04-cv-04135 (August 2005) (approving $37 million settlement for claims of failure to pay overtime; attorneys' fees of $9.25 million (25 percent)); *Coldiron v. Pizza Hut-Yum! Brands, Inc.*, C.D. Cal. No. 03-5865 (June 2006) (approving $12.5 million settlement for alleged improperly classified restaurant managers as exempt from overtime with attorneys' fees of $3.125 million (25 percent)); *Mousai v. E-Loan, Inc.*, N.D. Cal. No. 3:06-cv-01993-SI (January 12, 2007) (preliminary approval of settlement of $13.6 million for claims of unpaid overtime, and meal and rest break violations; attorneys' fees award estimated at $3.4 million (25%)).

| Plaintiff's Putative Class Claims | Amount in Controversy |
|---|---|
| Failure to Pay Minimum Wages (Count I) | $639,377.63 |
| Failure to Pay Overtime Wages (Count II) | $5,115,021.04 |
| Failure to Provide Meal Periods (Count III) | $639,377.63 |
| Failure to Provide Rest Breaks (Count IV) | $639,377.63 |
| Wages During Employment (Count V) | $812,200.00 |
| Wage Statements (Count VI) | $398,300.00 |
| Waiting Time Penalties (Count VII) | $951,720.00 |
| Failure to Indemnify Expenses (Count VIII) | (not included) |
| Unfair and Unlawful Competition (Count IX) | Incorporated in the above |
| TOTAL (without attorneys' fees) | $9,195,373.93 |
| Attorneys' Fees (assumed 25%) | $2,298,843.48 |
| **AMOUNT IN CONTROVERSY** | **$11,494,217.41** |

58. While Defendant denies that this amount is owed, and disputes both liability and damages, the $11,474,717.41 in controversy is well in excess of the $5,000,000 jurisdictional minimum. (*See* Complaint, Prayer for Relief.)

59. Thus, based on the allegations in Plaintiff's Complaint and without admitting liability, wrongdoing, or that Plaintiff or putative class members sustained any damages whatsoever, the amount in controversy in this putative class action is well in excess of the CAFA jurisdictional amount of $5,000,000. See 28 U.S.C. § 1332(d)(2).

60. In light of the above, Plaintiff has satisfied CAFA's jurisdictional requirements and this case is entitled to be removed.

## VENUE

61. The Pending Action is properly removed to this Court under 28 U.S.C. §§ 1441 and 1446 because it is pending in Santa Barbara County, which lies within this District. *See* 28 U.S.C. § 84(c)(3).

**NOTICE TO STATE COURT AND PLAINTIFF**

62. Contemporaneously with the filing of this Notice of Removal, Defendant is filing a Notice with the Clerk of the Superior Court of the State of California, County of Santa Barbara. *See* 28 U.S.C. § 1446(d). A copy of the Notice to State Court of Removal to Federal Court is attached hereto as **Exhibit F**.

63. This Notice of Removal and a Notice of Filing of Notice of Removal have also been served this day via email and first-class mail upon Plaintiff's counsel, Blackstone Law, APC, 8383 Wilshire Boulevard, Suite 745, Beverly Hills, California 90211, e-mail: jgenish@blackstonepc.com; kgold@blackstonepc.com; acruz@blackstoneep.com; and mmayhood@blackstonepc.com.

64. Defendant reserves all defenses, including defenses as to sufficiency of service of process, personal jurisdiction, and arbitration.

WHEREFORE, Defendant respectfully requests that the State Court Action be removed and hereinafter proceed in the United States District Court for the Central District of California, Western Division.

Dated: April 8, 2024

/s/ Khatereh S. Fahimi
Khatereh Sage Fahimi
Warsame Y. Hassan
LITTLER MENDELSON, P.C.
Attorneys for Defendant
DENMAT HOLDINGS, LLC

4857-2885-7012.1 / 052225-1000